Case number 22-3064, United States of America v. Thomas Webster, at-balance. Ms. Brandenburg for the at-balance, Mr. Goodhand for the at-vote.  May it please the court, I'm Elizabeth Brandenburg for Mr. Webster. Good morning. This case was about bias. The bias of the chief complaining witness in this case, Officer Rathbun, was not permitted to be brought before the jury in this case, violating Mr. Webster's constitutional right to confront the witnesses against him. Officer Rathbun had been investigated for a officer-involved shooting that took place shortly after, some months after the events of January 6th. During the pendency of the investigation and preparation of this case for trial, Officer Rathbun remained under investigation while he was working with the government to develop the case. The government sought to restrict that information from being brought before the jury, and it was discussed in briefs as well as in a pretrial conference. At that time, counsel brought up the concerns of the relevance of this information, that the relationship between the U.S. Attorney's Office, the government, and the witness while they were preparing for trial in this case could come into play in their investigation. The government has contended that this issue was waived at trial. Our contention is that it was waived, that it was fully litigated pretrial and determined, especially in regards to the U.S. Attorney's Office investigation of the officer. I'm looking at JA 824, and this was after it was disclosed that the investigation had been closed. And the government says, there's no more, you know, it was closed in his favor, no improper conduct found, so no reason for it to come in. The district court had previously said you could examine him about the fact that there was an investigation and that connection, or as you wanted to argue, that connection to the government. But once the investigation was resolved in the officer's favor, the government said, we request you not be permitted to engage in JA 824 of the joint appendix. And the trial counsel said, I think the government's position is correct. So no longer sought to, there's just no longer any basis for me to do this, and never tried to do it at trial. All the district court said after government said no, and defense counsel said, I think the government's right was, all right. So where is, where is the district court ruling excluding testimony? At that point in trial, your honor, the only issue that was still pending was the question of the investigation of the officers by the Metropolitan Police Department. The, we contend that the U.S. Attorney's Office investigation was argued and determined before trial and had been determined at that point. That counsel had argued about the relevance of it, that the government, the very same entity investigating and prosecuting the case had investigated the officer involved. At the time of trial, or at the time of the pre-trial hearing that that, when that conversation took place, the MPD. The one I'm talking about or the one you're talking about? I just want to make sure. The, the one you're talking about. The MPD investigation was pending or thought to be pending at the time of the pre-trial hearing. By the time of trial, it was determined and discovered that it was no longer pending. That's what I'm talking about. And at that point, as I read the transcript, government said, there's no reason to allow inquiry now because, so there was no misconduct. It was resolved in his favor. There's no evidence of misconduct. And Mr. Monroe, trial counsel for the defendant at the time for Mr. Webster says, I think the government's position is right here. And I, I think the government's position is correct. Having previously been told by the district court, you can ask questions. And so the district court didn't really just said, government said, we don't think you can do it. Defense attorney said, government's right. And just said, all right. Let's see. I think the parties had sort of resolved it and there was no longer an issue. So that's what I'm trying to find where in the record is the ruling post this and gate this discussion that you say the district court aired where the district court aired. There is not a ruling at trial beyond what your honor has described. The distinction I'm making is between the two investigations, the U.S. attorney's investigation, which was complete at the time of the pretrial hearing and the MPD investigation, which was not thought to be complete at that time. And so that was the only pending issue leading into trial was the admission of the pending investigation. The MPD one? Yes. And that's the one that counsel said the government's right. Nevermind. Yes. Okay. And the, our contention is that it wasn't waived because it was, it was preserved in the pretrial hearing. But even if it was waived, that counsel was ineffective in that. Okay. But where is, why isn't it a waiver or at least a forfeiture? I'm not sure it matters for these purposes. What the difference, which, which label you want to put on it? Why, why did, where is there any objection? I mean, counsel clearly gave up the issue. So why isn't this at least forfeiture? If not waiver counsel gave up the issue in regards to the MPD investigation had been previously argued in regards to the U.S. attorney's office investigation and that having been determined, determined, not admissible at the pretrial hearing. So the district court said that it was okay to ask about the, the fact of the investigation, the linkage without going into the merits, correct. The pending investigation, the still pending investigation at that time, that was the only question still open for determination going into trial. So our contention is both investigations should have been allowed to be delved into, but there is a distinction in the preservation between the U.S. attorney's office investigation and the MPDs investigation. Where is the district court ruling? Where in the record is the district court ruling on the, you're only arguing now about the U.S. attorney investigation. Not, not only, but there, there is, I recognize that there is a difference between the preservation of those two investigations and the, the issue. Where's the, where's the district court ruling on the U.S. attorney? In, in some, it's not in so many words. I, I will admit to that, but on GA 233 is the discussion of where the off, the council argued the relevance of that U.S. attorney's office investigation. And the court focuses more on the pen, the nature of the pending investigation or the, that the investigation itself is pending, the one that is pending. But it's the same, it's the same. You should, you can, you can talk about, you can ask about, so is, is your argument here that the court erred in not letting you get into the merits because the district court said you can ask about the investigation? No, no, Your Honor. The, the contention is not that the merits should have been gotten into, but the question that should have been allowed was, have you been under, during the pendency of this, of this prosecution of this case, have you been under investigation by the U.S. attorney's office? Yeah. Where did the district court say you can't ask that question? What, I'm sorry? Where did the district court say you can't ask that question? The district court does not say that directly. Or does the district court say it indirectly? My side. Is the district court error? Are we, are we, you're, you're arguing for district court error? Yes, yes, Your Honor. I, my notes say this at 2.33. The, the counsel had argued that he was, and I quote, not casting aspersions to the Department of Justice, but they're very, they've been very assertive in making sure that their relationship with Rathbun and them having conduct cleared him in a separate shooting and his role in this case, not being made part of public consumption. I think the public needs to know, just like the case would know, that there may have been a process in play where the Department of Justice clearing this officer because of his role in this case. I don't say that on 2.33, but what I do say on 2.32 is the court's saying, I don't disagree with that, except you don't get to ask them about the nature of the investigation. You just get to ask about the fact of investigation. Yes, Your Honor. And so what was the error in the district court saying you can ask about, cross-examine about the fact of an investigation. You just can't get into the nature of it. I see my time has run. The error at, the error was not allowing the investigation into the, what the U.S. Attorney's Office had been investigating the officer. Again, where did the, the quote I just provided was on 2.29. And the, the court conflated the two investigations as well as concentrated more on not getting into the merits, which was, was part of the discussion, but is not part of our contention of what should have been allowed. The district court was given one answer, and that is you can ask about is because of the potentially prejudicial impact. The court's ruling was that the pending investigation could be gone into about potential bias, not as to the completed investigation. With respect to your challenge to the jury instructions, these were jointly proposed and agreed to by defendants counsel. So, so why isn't that invited error in this case where the instructions were agreed to between the parties? It's not invited error in that there's no evidence that it was part of trial counsel's strategy to, to, to induce the error to, or even recognizing that there was an error to be had. That's the issue, the problem with the jury instructions was begun with the indictment in this case, and how it put both violate both ways of violating 111 through A1 and through subsection B into one account. And our contention is that that, while that may be permissible, that contributed to the confusion in this case in both providing the charges to the jury and also contributing to the, the constructive amendment that amounted from the jury charges. Force government to prove something more than what they had to prove to get a conviction. How exactly does that harm your client? Well, the, the additional or requiring both the elements from A1 right, correct. But more than just that, the jury instruction did not, or it was not as specific as the indictment was as to what was the instrumentality of the deadly or dangerous weapon. And that has been found by the cases I cited from the 11th circuit that this court has, has examined previously in Brown, that going from a specific indictment to a more broad allowance in the instruction amounted to a constructive amendment. In this case, flagpole was in, was in the indictment and was not in the jury instructions. And there was evidence presented that could have supported other instrumentalities having been a deadly or dangerous weapon. Is your objection not to the extra element, but simply that the three instructions didn't say flagpole is the deadly weapon? It's both. They go together, contributed. I'm not sure they do this. I'm trying to understand why they do, because you're saying, sorry, the constructive amendment was that it allowed some deadly weapon other than the flagpole to the jury instructions. Is that so? But it's not, then it's not an extra element thing. It's simply specific to general, as you say. We've raised both ways, both ways that the instruction was erroneous, both for adding the extra element and in constructively amending the indictment in the specificity. Was there any evidence put into the record or any argument made by anybody? There was any weapon implicated in this case other than the flagpole? Argument? No. But evidence, evidence existed as to when hands were placed on officer and that and presented the cases that support that hands, your body can be a deadly or dangerous weapon, as well as when. But no one argued to the jury that the deadly weapon here was hands. No, no one argued to that, to the jury of that. But the evidence was presented to the jury and the addition of the additional. The hands had to be presented because there's also the contact, the physical contact with the officer. Correct. That evidence was presented as part of the assault. The extra element that was added. Contributes to the confusion in that regard, because. They, the jury is looking at when the physical contact took place and when, you know, whether a deadly or dangerous weapon was being used. And that that. Exacerbated the issue with the specificity and the broadness versus the indictment versus the actual jury instruction. Just on the waiver, can you point me to where in your briefs you distinguished between the MPD investigation and the U.S. Attorney's Office investigation? Uh, in our brief on page five and six. Right. The, the quote that I read earlier and another quote from counsel and his concentrating on the issue of the DOJ's investigation is where we discuss that. And then you're limiting 824 to MPD. That's where we get it. The waiver on 824. Yes. Okay. Yes, your honor. I understand. Thanks. Thank you very much. Thank you. A couple minutes on rebuttal. Good morning, your honors. May it please the court. David Goodham for the United States. Turning to the issue of the cross-examination, we do think that the defendant has waived that issue and wasn't simply forfeiture. You know, to this. Does it matter? It doesn't. It doesn't. You know, and. Could be invited error too, right? It could be to the extent that I, you know, I think read the, I think you read the argument starting at page 230, J. A. 235, all the way to J. A. 235. I think you read that argument as a court actually understood. I mean, I know counsel is now drawing a distinction between. If we put aside for the sake of argument, the MPD versus USAO. Yes. Which feels new to me, but we put that aside. The statement on 824 is the government's position is correct. Yes, and I do think that equals invited error. But, you know, and one final thing I'll say on this distinction between the two that is pending versus completed. I look at J. A. 233 and I see the court saying to defense counsel, I heard you suggest that you want to ask him. There's a pending use of force investigation. So to the extent there might have been some ambiguity about what defense counsel was. Asking for during that colloquy, I think the court understood he was asking about the pending investigation, and in fact, you will see in that same. 10 pages, the defense counsel asked for a continuance. You know what? We should just wait for this all to play out and then I can we can determine if there was any finding of wrongdoing. So anyway, my core point is I don't think the court understood the distinction that's being drawn here. Number one, number two, we think it is an invited error, certainly with respect to the MPD investigation. Number three, it would be invited error if there was no district court ruling. Well, there is a district court ruling, your honor. The district court is all right. There are two rule. Oh, well, you mean with respect to the MPD investigation? Yeah, well, I think that to my mind, that about error because there's no court ruling. It's just the party has sort of worked it out. I understood. I think, you know, in context, the court understood that the battle was about the pending MPD investigation. The parties work it out and the court agrees that now that it's no longer pending, there's no bias. I don't think the district court was making a legal ruling at all. That's why I'm just confused about the invited error thing. I understand. I understand forfeiture, but I understand that an error. There's no error. Not only is there no error by the district court, I understand ruling. I mean, you have to have a ruling. Sure. And if this court disagrees, it's it's really you think. All right. It's a ruling, I think, in context, given the battle back and forth between the parties that that wasn't a battle at that point. There was agreement between the parties at that point and the battle and the court signed off on it. But again, you know, you've agreed you don't want to you can't ask and you agreed you can't ask. I don't think saying all right. Sure. I don't want to put I don't want to read to my district court's words and start declaring if a ruling of any sort when parties has sorted something out and they go, OK, no, you can't do I agree. I can't. And all right, let's move on. I understand. And certainly, I mean, maybe I'm gilding the lily too much. I mean, my instinct was the government's position is correct, is a stronger dissociation than just we're not pursuing this issue. Sure, sure. I mean, you know, certainly reasonable minds can disagree. But the core point here is even if we get passed waiver and we're in the forfeiture context and we're in plain error context, it's impossible, I think, to understand that this amounted to either obvious error, but more critically, that it was substantially prejudicial. And, you know, to the extent that we're talking about prongs three and four here, I would just direct the court to the body worn camera footage from Officer Rathbun. But more particularly, I would direct the court to the district court's description of that body worn camera footage. And that's during the sentencing at J.A. 1907. The court says, I've seen that video more than probably anyone, and I still remain shocked. The video speaks for itself. You were the first aggressor, no doubt about it. You were the one who was taunting the officer, no doubt about it. You were the one with extraordinary force who brought down that flagpole. You took him to the ground. And that's all J.A. 1907. My point being that any incremental, minimal ammunition, if you will, that might have been gleaned via the cross-examination for bias of Officer Rathbun would not have substantially, the lack of it wouldn't have substantially prejudiced. Your Honor, you know, I'd be happy to take additional questions. I wanted to clarify those facts on the record. We had a question about the, it was brought up in the opening with the voir dire process. There was juror 1156 who said, Mr. Webster is disadvantaged with him on the jury, and he wouldn't start at 00. Or she, I can't remember, 1156 gender. I'm not starting, I'm starting at 00, you're coming in disadvantaged. Sure. I'm sorry, go ahead. What I was just going to ask is, how can that possibly be someone who's allowed to get into the jury? A couple of things, Your Honor. If I might just get my transfer. Sorry, I'm bringing it up. That's my fault. Most fundamentally with respect to juror 1156, and certainly I'm happy to talk about that sort of question. Just how this person got through. I'm not, you're not starting, not only you're not starting with presumption of innocence, you're starting on uneven ground with me. That seems very, very worrisome. I should have thought the government would say someone like that just shouldn't be going into the jury pool at all. Sure, I understand. But my core point with 1156 is, of course, he didn't sit. No, I get that. Okay. Asking about confidence in the, because the whole. Sure. I mean, I think the answer is, let's trust the voir dire process. And to me, at least on this concern, and I get your point that the person didn't sit. I'm just asking how it was that the government even would allow someone into a jury pool when they say not even starting on an even plate, let alone presumption of innocence. Well, I think the answer is on JA 324 and 325, where the court says. Would you have any trouble in acquitting the defendant if you determine the government had not carried his burden unequivocal? No, from the juror. Then at the next page, that doesn't deal with the starting point. That's the end point. And what it would take for an acquittal if you're starting, not starting in an even point is different. I don't think that answers. I'm not starting with presumption of innocence. I'm not even starting with them on even playing field. Again, I think I also think the next page, JA 325. Could you evaluate the court goes through? Could you set aside your voting history, political affiliation, evaluate the evidence in this case against a legal. My political affiliation is, again, not the same thing as saying I agree that I start with a presumption of innocence. No, I understand the court's concern, certainly. Again, there's substantial deference that is assigned to the district court's assessment of the responses. There's demeanor. There's a question of candor. I don't believe in the presumption of innocence, but the government's view is that person should still go into the jury pool. I'm not sure that I they don't even start on an even plane. I don't start in zero zero. I think we're the words. Well, you know, and again, the do you understand my misunderstanding? That language is you are starting at a disadvantage. You are not starting at zero zero, which I take to be a level playing field. And, of course. Law is not even a level playing field. It's an unlevel playing field against the government. Sorry, I'm just looking for the actual language. I think it was three thirty or three thirty one three. I'm sorry. Three thirty. I think that's what I hear. I don't think this is like a zero zero game to start. Right. Yeah, right. Could you start from a presumption of innocence? I honestly don't think so. Sure. And then but then you and part of this emanates from the fact that the defense council asked, you know, would my client be disadvantaged if you concluded that he was? And there was a direct answer that I can't start from a presumption of innocence. But then you look at when the court asks, and this is three thirty. What do you mean by disadvantage? And the juror says, you know, like I still presume the defendant to be innocent until the government proves their case. So to my mind, you know, any ambiguity relating disadvantage and and that clarified it. So I can, you know. Substantial deference is due the district court in assessing on the whole colloquy, whether or not the juror is in fact willing and able to adhere to the rules and or be fair and impartial. But even putting aside that deference and even putting aside perhaps the ambiguity colloquy, again, the bottom line here is that that juror didn't end up sitting. And the court in skilling was very clear. If a juror does not sit, if you use the peremptory that that missing peremptory does not equal a violation, a constitutional violation, impartial jury. All right. Thank you very much. Thank you, your honors. We would ask that you affirm the judgment and conviction. Famous Weidenberg will give you two minutes. Thank you, your honor. I first would like to speak as to the last conversation about. This this disadvantage, that's kind of how I call him shorthand. The only question that this. Juror asked and which was the answered that was the saving grace for the court in denying the the challenge for cause was would he have trouble? And the judge, the court asked this question at least 23 times of different jurors. And this is a very problematic question, whether the if the government carried its burden beyond a reasonable doubt, whether the juror could still or failed to carry the burden beyond a reasonable doubt, whether the juror could acquit the defendant. This is a this is a question based on a false premise because a biased juror doesn't have. Trouble acquitting someone when the government has not carried its burden by a juror will would determine in the first instance that the government had carried its burden. The question asked the juror to assume that the government has carried its burden and then or I'm sorry, not carried its burden. It's a it's a confusing question. At least two jurors had were confused by a one pointing out that question is a challenge on appeal. Well, I did raise the question or put in our brief that that question was asked. The and it contributes to the what we've raised with that disadvantage. This juror who said that the defendant would be at disadvantage with him what should have been struck and that that question permeated the voir dire. We're asking the court to look at it, that that question is problematic in and the court in denying the motion for cause even said that's what I'm looking for. When the answer to that question, it's it's a rote rehabilitation of the juror. Suppose it were assumed for the sake of argument that juror should have been stricken for cause. What do you do with killing and the other cases saying it doesn't matter if you elect to use a peremptory and that juror doesn't sit? Well, I raised that question because that question is how that juror did get into the jury pool answer to that question. And that question was asked of at least three jurors who did get onto the jury when discussing their previous exposure to the media coverage in this case. So, it did that the asking of that question did contribute to actual juror members being placed on the jury. And it shows that this was not the full thrifting voir dire that was described in skilling where the court was trying to get at the bias of jurors and the potential bias of jurors due to their exposure to pretrial media coverage. In this case, the you challenged correct me if I'm wrong. I thought you challenged the seating of jurors 8, 13 and 19. Correct? Yes. And I apologize. So, we just look at those colloquies and make a judgment whether those jurors were biased, right? Well, I think the court looks at the entire voir dire to see if it was so infected that it didn't overcome the prejudice that existed in the veneer that the citizens of the district were faced with in having been in the district and inundated with the media coverage of the events of January 6. So, we would ask the court to overturn the defendant's case. Thank you very much. Thank you. Case is submitted.
judges: Millett, Katsas, Rao